MICHELLE GRAVES, Petitioner, v. CHIEF LEGAL COUNSEL OF THE DEPARTMENT OF HUMAN RIGHTS *et al.*, Respondents.

Fourth District    No. 4—00—0925

Argued October 23, 2001.—Opinion filed January 16, 2002.

James P. Baker (argued), of Law Offices of James P. Baker, of Springfield, for petitioner.

Mark S. Atterberry (argued), of Holley & Rosen, of Springfield, for respondent Larry Lancaster.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Mary Patricia Kerns (argued), Assistant Attorney General, of counsel), for respondents Chief Legal Counsel and Department of Human Rights.

William M. Lawson, of McMahon, Berger, Hanna, Linihan, Cody & McCarthy, of St. Louis, Missouri, for respondent Shop 'N Save Warehouse Foods, Inc.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

In this judicial review proceeding pursuant to section 8—111(A)(1) of the Illinois Human Rights Act (Act) (775 ILCS 5/8—111(A)(1) (West 2000)) and Supreme Court Rule 335 (155 Ill. 2d R. 335), petitioner Michelle Graves seeks judicial review of a portion of the decision of the chief legal counsel of the Illinois Department of Human Rights (Department). The chief legal counsel determined that the Department did not have jurisdiction of sexual harassment claims for actions occurring more than 180 days prior to petitioner filing charges against respondent Larry Lancaster. Petitioner does not seek review of similar determinations by the chief legal counsel concerning the limitations period on claims against respondent Shop 'N Save Warehouse Foods, Inc. (Shop 'N Save), the employer of petitioner and Lancaster. Shop 'N Save has not filed a written appearance and is not a party in this appeal. 155 Ill. 2d R. 335(c). Nor does petitioner seek review of the dismissal of a claim against Lancaster for retaliation that the chief legal counsel upheld because Lancaster was not her employer. Finally, not at issue in this case is the chief legal counsel's findings of substantial evidence with regard to the petitioner's claims against Lancaster for actions occurring within 180 days of the filing of the charges. Petitioner challenges the propriety of the chief legal counsel's findings of lack of subject-matter jurisdiction of claims arising from the actions of Lancaster that occurred more than 180 days prior to filing the charges. We affirm.

■ The parties suggest that the proper standard of review is whether the chief legal counsel's decision is "clearly erroneous." We disagree. The chief legal counsel's decision to sustain a dismissal of a human rights violation charge will not be disturbed unless it is arbitrary, capricious, or an abuse of discretion. *Webb v. Lustig*, 298 Ill. App. 3d 695, 704, 700 N.E.2d 220, 226 (1998). The chief legal counsel's determination is not a quasi-judicial decision. In *Webb v. Lustig*, this court discussed at length the statutory procedure for pursuing a claim of discrimination. *Webb*, 298 Ill. App. 3d at 702-03, 700 N.E.2d at 225. This court noted that, before the Department issues a formal complaint, the proceedings are investigatory, not adjudicatory, and the dismissal of the charge by the Department occurs at the investigatory stage, including the chief legal counsel's determination of whether to uphold the dismissal. *Webb*, 298 Ill. App. 3d at 703, 700 N.E.2d at 225.

The Department and chief legal counsel's determinations are prosecutorial, *i.e.*, whether to prosecute a claim, and the standard applicable to reviewing decisions on mixed questions of law and fact in judicial decisions simply does not apply here.

Where an administrative agency's decision involves a mixed question of law and fact, the "clearly erroneous" standard may no longer be the appropriate standard to apply even though that was the standard that was applied by the supreme court in *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). The supreme court in cases since *Belvidere* has broken the question down into its fundamental parts, reviewing questions of fact at the appropriate standard, such as manifest weight, and questions of law *de novo*. See *People v. Crane*, 195 Ill. 2d 42, 51-52, 743 N.E.2d 555, 562 (2001) (when reviewing the propriety of the trial court's determination of a speedy-trial claim, factual determinations are reviewed on a manifest weight standard and thereafter the court considers *de novo* the application of the balancing tests); *In re G.O.*, 191 Ill. 2d 37, 50, 727 N.E.2d 1003, 1010 (2000) (applying manifest weight standard to factual findings in a suppression hearing but deciding *de novo* the ultimate question of whether the question was voluntary).

■ Section 7A—102(A)(1) of the Act provides that, "[w]ithin 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department." 775 ILCS 5/7A—102(A)(1) (West 2000). The claim must be in such detail as to substantially apprise the concerned parties of the time, place, and facts surrounding the alleged violation. 775 ILCS 5/7A—102(A)(2) (West 2000). The 180-day requirement in section 7A—102(A)(1) is mandatory (*Lipsey v. Human Rights Comm'n*, 267 Ill. App. 3d 980, 992, 642 N.E.2d 746, 755 (1994)), and compliance is jurisdictional (*Faulkner-King v. Department of Human Rights*, 225 Ill. App. 3d 784, 792, 587 N.E.2d 599, 604 (1992)).

Petitioner made six allegations of sexual harassment, three against Lancaster and three against Shop 'N Save. She also made two allegations of retaliation, one against each respondent. The Department dismissed four of the sexual harassment claims for lack of jurisdiction and the other two for lack of substantial evidence. The Department also dismissed the retaliation claim against Shop 'N Save for lack of substantial evidence and the retaliation claim against Lancaster for lack of jurisdiction. Petitioner sought review by the chief legal counsel, challenging only the dismissal of the claims against Lancaster. The chief legal counsel sustained the dismissal of two claims of sexual harassment and the claim for retaliation against Lancaster on the

ground of lack of jurisdiction but vacated the dismissal of the third claim of sexual harassment, finding there was substantial evidence. In this appeal, petitioner does not challenge the propriety of the chief legal counsel's ruling that the retaliation claim against Lancaster could not be maintained because he was not an "employer" within the meaning of the statute.

The chief legal counsel found that claimant filed her charge on June 10, 1999, and amended it on September 22, 1999. The Department broke down the allegations by grouping the first set of allegations of sexual harassment against Lancaster to have occurred between June 1997 and August 13, 1998, more than 300 days prior to the filing of the charge; the second group of allegations of sexual harassment against Lancaster on August 14, 1998, to December 11, 1998, more than 180 days prior to the filing of the charge but less than 300 days prior to the filing of the charge; and the third group from and after December 12, 1998, within 180 days of the filing of the charge. The petitioner's charge alleged that the sexual harassment consisted of sexual comments, sexual innuendos, requests for sex, and touching of her body, specifically her breasts. The importance of the 300-day period apparently refers to the jurisdiction of the Equal Employment Opportunity Commission under federal law. See 42 U.S.C. § 2000e—5(e)(1) (1994). In upholding the dismissals, the chief legal counsel relied solely on the 180-day condition precedent contained in section 7A—102(A)(1) of the Act.

In this appeal, petitioner argues that, although some of the acts of sexual harassment may have occurred more than 180 days prior to the filing of the charge, the sexual harassment was continuous and the "continuing violation doctrine" should be employed to find jurisdiction of all the alleged incidents.

Lancaster argues that this issue is waived. He fails to discuss how waiver applies at the investigatory stage of a discrimination proceeding. None of the cases he cites on the issue of waiver involve a proceeding under the Act. The petition for review by the chief legal counsel does not employ the term "continuing violation doctrine." That petition does nevertheless make an argument of continuing sexual harassment activity. Waiver did not occur in this case.

None of the parties dispute the applicability of the "continuing violation doctrine," and they recognize that Illinois courts have looked to federal decisions involving Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e) *et seq.* (1994)) in evaluating the merits of discrimination claims under the Act. Illinois courts have recognized the existence of the doctrine (*Trembczynski v. Human Rights Comm'n*, 252 Ill. App. 3d 966, 970-71, 625 N.E.2d 215, 218-19 (1993); *Lee v. Hu-*

*man Rights Comm'n*, 126 Ill. App. 3d 666, 670-71, 467 N.E.2d 943, 946-47 (1984)), and it has been applied at the administrative level (see *McCullar v. Human Rights Comm'n*, 158 Ill. App. 3d 1011, 1017, 511 N.E.2d 1375, 1379 (1987)).

■ The Seventh Circuit Court of Appeals has recently discussed the continuing violation doctrine on a number of occasions.

In *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999), the court stated:

> "[T]he continuing violation doctrine has delineated limits. Where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she 'cannot reach back and base her suit on conduct that occurred outside the statute of limitations.' *Id.* at 1167; *Doe v. R.R. Donnelley & Sons., Co.*, 42 F.3d 439, 446 (7th Cir. 1994). While a single comment may not be harassment, if the comment is repeated over a period of years, its cumulative effect likely precludes invocation of the doctrine. See *Galloway*, 78 F.3d at 1167."

■ In *Filipovic v. K&R Express System, Inc.*, 176 F.3d 390, 396 (7th Cir. 1999), the court stated that the party alleging the discrimination has the burden of showing that the harassing actions outside the statutorily prescribed period were sufficiently closely related to the harassing actions occurring within the statutory time frame to be considered an ongoing violation.

> "Courts will consider three factors in making this determination: (1) whether the acts involve the same subject matter; (2) the frequency at which they occur; and (3) the degree of permanence of the alleged acts of discrimination, 'which should trigger an employee's awareness of and duty to assert his or her rights.' *Id.* At 565. The continuing violation doctrine is applicable only if 'it would have been unreasonable to expect the plaintiff to sue before the statute ran on the conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations.' *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996) (citation omitted)." *Filipovic*, 176 F.3d at 396.

In *DeClue v. Central Illinois Light Co.*, 223 F.3d 434, 435-36 (7th Cir. 2000), the continuing violation doctrine was not applied because the incidents upon which the plaintiff relied, including repeated shoving, pushing, hitting, sexually offensive touching, exposing her to pornographic magazines, and failing to provide her with rest room facilities, all occurred outside the statutorily required time frame, and nothing that happened within the statutory time frame added materi-

ally to the conditions about which she complained. It was just more of the same. The harassing conduct that occurred prior to the statutory time frame was sufficient to place her on notice that she had a substantial claim so that the continuing violation doctrine did not apply. See *Shanoff v. Illinois Department of Human Services*, 258 F.3d 696, 703 (7th Cir. 2001). *Shanoff* also rejected an estoppel argument based on a contention that threats by the harassing employee prevented the plaintiff from filing a claim earlier. *Shanoff*, 258 F.3d at 702-03.

■ The question of whether the continuing violation doctrine applies generally to claims of discrimination under the Act is a question of law. The chief legal counsel's decision does not reject or discuss the continuing violation doctrine. Petitioner does not expressly contend that the chief legal counsel failed to apply a correct legal standard.

Attached as an exhibit to the petition for review by the chief legal counsel was an affidavit of petitioner. In paragraph 4 of that affidavit, she details multiple harassing actions of Lancaster that occurred between June 1997 and April 1999. For the most part, petitioner does not identify the specific time frame in which those events occurred. Paragraph 5 of the affidavit states, "Conduct of this type described in the preceding paragraph occurred generally on a daily basis between June of 1997 and April 3, 1999."

■ Many of the actions described in petitioner's affidavit are acts of sexual harassment that would independently support a charge under the Act and would have placed petitioner on notice that she had an actionable claim. Petitioner cannot avoid the application of the statutory condition precedent by simply failing to inform the Department and chief legal counsel of the precise dates on which the incidents occurred. The facts of this case fail to invoke the continuing violation doctrine. The chief legal counsel's decision was not arbitrary, capricious, or an abuse of discretion.

The portion of the decision of the chief legal counsel sustaining the dismissal of stale claims for lack of subject-matter jurisdiction is affirmed.

Affirmed.

KNECHT and STEIGMANN, JJ., concur.